IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GRAPHIC COMMUNICATIONS CONFERENCE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS UNION SUPPLEMENTAL RETIREMENT AND DISABILITY FUND; GEORGE TEDESCHI, TRUSTEE, AND PAUL ROSENBERG, TRUSTEE, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. |
| JOLIET LITHO-PRINT CO., INC., | ) ) | |
| Defendant. | ) ) | |

**FILED**

**JANUARY 16, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

PH

**08 C 354**

**JUDGE BUCKLO
MAGISTRATE JUDGE MASON**

## COMPLAINT

Plaintiffs Graphic Communications Conference of the International Brotherhood of Teamsters Union Supplemental Retirement and Disability Fund (hereinafter referred to as the "Fund") and its Co-Chairmen Trustees, George Tedeschi and Paul Rosenberg, complaining of the Defendant, allege as follows:

I.

## JURISDICTION

1.     This is an action to collect delinquent payments to a multi-employer pension plan subject to the provisions of the Employee Retirement Income Security Act of 1974, 28 U.S.C., § 1000, et seq. ("ERISA"). This Court has jurisdiction of the action under § 502 of ERISA (29 U.S.C., § 1132).

II.

## THE PARTIES

2.    The Plaintiff Fund is established pursuant to agreements between Local 471-M of the Graphic Communications Conference of the International Brotherhood of Teamsters Union, and Joliet Litho-Print Co., Inc., in order to provide for pensions, disability and related benefits to employees covered by collective bargaining agreements between Local Union and company. The Fund was and is an employee benefit plan within the meaning of § 3 (3) of ERISA (29 U.S.C., § 1102 (3)), and was and is controlled and managed by certain fiduciaries within the meaning of 402 of ERISA (29 U.S.C., § 1002) and was and is engaged in providing benefits on behalf of covered employees, as provided for in the contract between Local 471-M, Graphic Communications Conference of the International Brotherhood of Teamsters and the Defendant. The Fund's principal place of business for such purposes is in Carol Stream, Illinois. Plaintiffs George Tedeschi and Paul Rosenberg are Co-Chairmen of the Board of Trustees of the Fund.

3.    Upon information and belief, the defendant, Joliet Litho-Print, Co., Inc., is an entity in Joliet, Illinois engaged in the business of commercial printing, maintaining its business at 423 N. Chicago Street, Joliet, IL 60435. Defendant was and is an employer within the meaning of the term as defined in § 3 (5) ERISA (29 U.S.C., § 1002 (5)).

III.

## **CLAIM FOR RELIEF**

4.    Plaintiffs re-allege each and every allegation contained in Paragraphs 1 through 3 above, as if fully set forth.

5.    Local 471-M of the Graphic Communications Conference of the International Brotherhood of Teamsters Union, as the collective bargaining representative of certain employees of the Defendant, entered into and maintained a written collective bargaining agreement at all times

relevant hereto. Local 458-M of the Graphic Communications Conference of the International Brotherhood of Teamsters Union is now the successor bargaining representative the employees covered under the Agreement between the Company and Local 471-M.

6.     The current collective bargaining agreement between the Defendant and Local 471-M provides that the Defendant shall make monthly periodic contributions on behalf of its covered employees to the Fund.

7.     Commencing in March 2006 and continuing through May 2007, Defendant became delinquent in making monthly contributions to the Fund in breach of the terms of the collective bargaining agreement and terms of the Agreement and Declaration of Trust on behalf of the Fund. The Declaration of Trust permits the Trustees to assess interest and establish liquidated damages on delinquent amounts of monies owed and entitles the Trustees to recover all expenses for collection efforts and reasonable attorneys' fees. Interest is assessed at the rate of prime plus one percent per annum, or 8% whichever is greater, and liquidated damages are set at 20% of the unpaid contributions.

8.     Defendant has failed to remain current in its contributions and now owes amounts for the period from March 2006 through and including May 2007.

9.     Defendant has violated §§ 502 (a)(3) and 515 of ERISA in that it is delinquent in its contributions to the Fund for the months of March 2006 through and including May 2007 in violation of the collective bargaining agreement, the Agreement and Declaration of Trust and ERISA.

WHEREFORE, the plaintiffs pray that this Court enter judgment in their favor and against Defendant Joliet Litho-Print Co., Inc., pursuant to the provisions of § 502 (g)(2) of ERISA, 29

3

U.S.C. § 1132 (g)(2) plus any amounts for any delinquencies subsequent to the filing of this case but

prior to entry of a final order, plus attorneys' fees and costs, and such additional costs and reasonable

attorneys' fees and such other relief as the Court deems proper.

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By:    /s/ Peter Leff

KAREN I. ENGELHARDT
ALLISON SLUTSKY & KENNEDY, P.C.

By:    /s/ Karen I. Engelhardt

Karen I. Engelhardt
Angie M. Cowen
Josiah Groff
Allison, Slutsky & Kennedy P.C.,
230 W. Monroe Street, Suite 2600
Chicago, Illinois 60606
(312) 364-9400
Local Counsel

Peter Leff
O'Donnell, Schwartz & Anderson, P.C.
1900 L Street, N.W., Suite 800
Washington, D.C. 20036-5023
Ph: (202) 898-1824                                    January 10, 2008

4

# AGREEMENT

## BETWEEN

## WILL COUNTY EMPLOYING
## PRINTERS ASSOCIATION
## OF WILL COUNTY

## GRAPHIC COMMUNICATIONS
## INTERNATIONAL UNION
## LOCAL 471-M, AFL-CIO
## JOLIET/OTTAWA, ILLINOIS

Exhibit A

## CONTENTS

AGREEMENT...........................................................1
APPRENTICE..........................................................6
APPROVAL...........................................................16
BEREAVEMENT  PAY....................................................9
CALL-BACK and Reporting Pay.........................................5
CLASSIFICATIONS.....................................................1
CONFLICT OF FEDERAL OR STATE LAW...................................16
EFFECTIVE  DATE.....................................................4
GRIEVANCES.........................................................14
HEALTH & WELFARE FUND...............................................7
HOLIDAYS...........................................................11
HOURS OF WORK.......................................................4
INTERNATIONAL  APPROVAL............................................17
LIFE  INSURANCE.....................................................9
MANAGEMENT'S  PREROGATIVE...........................................3
NEW MACHINES  OR  PROCESSES.........................................3
NIGHT  SHIFT........................................................6
NO  DISCRIMINATION.................................................16
OVERTIME............................................................5
PICKET  LINE.......................................................17
RETIREMENT  FUND...................................................10
RIGHT OF EMPLOYEE..................................................16
SICKNESS AND ACCIDENT...............................................9
SANITATION.........................................................11
SENIORITY...........................................................6
SEVERANCE  PAY.....................................................14
SIGNATORY..........................................................18
SUB-CONTRACTING.....................................................3
SUPERVISORY  EMPLOYEES.............................................17
TERMINATION  OF  AGREEMENT..........................................4
UNION  ACCESS.......................................................3
UNION  NOTICES......................................................4
UNION  RECOGNITION..................................................1
UNION  SECURITY.....................................................2
VACATION...........................................................12
WAGES...............................................................6

**ARTICLE 1**                    **AGREEMENT**

1.1        This Agreement entered into this Eleventh day of June, 2001, by and between the Will County Employing Printers Association of Will County, Illinois, hereinafter referred to as "Employer", through its authorized representatives, which shall include such employers who may hereinafter become members of the Association and who subscribe to this collective bargaining agreement, and all other employers who are signatories hereto and who do not become member of the Association, their successors and assigns, and Graphic Communications International Union Local Union No. 471-M, affiliated with the Graphic Communications International Union, hereinafter referred to as the "Union".

**ARTICLE 2**                    **UNION RECOGNITION**

2.1        The Employer hereby recognizes the Union as the exclusive bargaining representative of all Journeyperson Bookbinders, Apprentices and Material Handlers and Shipping employed by the Employer in its working establishment, located in the City of Joliet, Will County, Illinois, and wherever in this agreement the words "Employee" or "Employees" shall refer to Journeyperson Bookbinders, Bindery Helpers and Apprentices, and Material Handlers and Shipping.

**ARTICLE 3**                    **CLASSIFICATION**

3.1        J-1        A Journeyperson Binder No. 1 is one who prior to the effective date hereof worked as Journey person Binder No. 1 for the Employer, who has completed approved apprentice training and has satisfactorily passed a qualifying examination under procedures heretofore recognized by the Union and the Employer or has satisfactorily passed an examination recognized by the employer as qualifying one as a Journeyperson Binder No. 1 and has qualified as Journeyperson Binder Nol 1 in accordance therewith and who is qualified to

and does perform all of the work of the Bindery Department including without limitation set up and operation of all existing machines.

3.2    J-2    A Journeyperson Binder No. 2 is an employee who is not qualified to or does not perform the setup of the following machines: Paper Cutter, Folder, Stitcher, Perforator, Collator, Round Cornering Machine, Indexer, Hot Stamping Machine, Book Binding, Automatic Feeder, Clean Stick Applicator Machine, nor who does primary stock handling in loading and unloading, nor stock room work as presently assigned to Journeyperson Binder No. 1, but who does all other work about the shop, including gathering, padding and wrapping, and operating and watching of all machines (except the Paper Cutter) after set up.

3.3    J-3    Classification of Material Handler, Shipper and Truck Driver is one which generally performs duties of an unskilled nature: including material handling and packaging, shipping and delivery of merchandise, receiving and transporting of inventory and products, custodial work and such other miscellaneous duties about the shop as assigned.

## ARTICLE 4    UNION SECURITY

4.4    It shall be a condition of employment that all employees of the Company covered by this Contract who are members of the Union in good standing on the effective date of this contract shall remain members in good standing, Upon written notice from the Union that an employee is no longer a member of the Union, the Employer shall discharge the employee.

4.2    It shall be a condition of employment that those employees who are not members of the Union on the execution date of this Contract shall, on or before the thirtieth (30th) day following the execution date of this contract, become and remain members in good standing in the Union.

4.3    It shall also be a condition of employment that all employees covered by this Contract and hired on or after its execution date shall on or before the thirtieth (30th) day following the beginning of such employment become and remain members in good standing in the Union.

## ARTICLE 5                    MANAGEMENT PREROGATIVE

5.1    The management of the operation and the direction of the working force, including the right to hire, promote, suspend, discharge or transfer, and the right to relieve employees from duty is retained and vested solely and exclusively in the Employer, except as limited by specific provision in this Contract.

## ARTICLE 6    NEW MACHINES AND PROCESSES

6.1    In the event the Employer installs new machines or processes, he agrees to negotiate the issues of Union jurisdiction, working conditions and wages with the Unions it presently has agreements with.  If more than one union claims jurisdiction, this issue shall be arbitrated by the Unions at no cost to the Employer.

## ARTICLE 7        SUB-CONTRACTING

7.1    The union and Employer agree that certain work must be sub-contracted and that this is an Employer decision.  However, Employer agrees to avoid sub-contracting work that the Employer customarily does in his plant at such times as his own Employees under this Agreement are involuntarily working less than full work weeks or on layoff from his plant.

## ARTICLE 8                    UNION ACCESS

8.1    The Employer agrees that Union representatives shall have access to the plants during normal business hours, but such

3

access shall not be for the purpose of conducting meetings and shall not delay or interfere with production, except as may be agreed to by the parties.

## ARTICLE 9                UNION NOTICES

9.1    The Employer agrees to provide a bulletin board space to be located in a mutually agreed upon place for official Union notices.

## ARTICLE 10        EFFECTIVE DATE AND TERMINATION

10.1    This agreement shall be and become effective upon the date of its execution and shall continue in effect until the 10th day of June, 2004, at the hour of 12:00 Midnight, provided that it shall continue in effect thereafter from year to year unless written notice of a desire to terminate or modify shall be given by either party sixty (60) days prior to the expiration date hereinabove provided, or any subsequent annual termination date.

## ARTICLE 11        HOURS OF WORK

11.1    The normal weekly working time shall consist of thirty-seven and one-half (37 1/2) hours, five (5) days or five (5) nights.

11.2    The normal daily or night working time shall consist of seven and one-half (7 1/2) hours each day or night as the case may be.

11.3    Exclusive of the lunch period any seven and one-half (7 1/2) consecutive hours between the hours of 7:00 A.M. and 5:00 P.M. shall constitute the normal day shift.

11.4    Exclusive of the lunch period any seven and one-half (7 1/2) consecutive hours between the hours of 5:00 P.M. and 7:00 A.M. shall constitute the normal night shift.

4

11.5     The Lunch period shall not be a part of the normal daily working time nor a part of the normal night working time.

11.6     This section defines the normal hours of work and shall not be construed as a guarantee of the number of hours or work per day nor the days of work per week.

## ARTICLE 12        CALL-BACK AND REPORTING PAY

12.1     Any employee reporting for work shall be guaranteed a full day's pay, except in the event of: Employee's own lateness, voluntary leaving before the end of the shift, short shifts to share the work.

12.2     An employee called back to work after completing a shift shall be paid at double-time rate.

12.3     Notwithstanding the above and foregoing, Material Handlers, Shippers and Truck Drivers shall only be guaranteed four (4) hours.

## ARTICLE 13        OVERTIME

13.1     All time worked in excess of the unit of hours constituting a regular shift as defined above shall be paid at the rate of time and one-half for the first three and three quarter (3 3/4) hours and double time thereafter. All work performed on Saturdays shall be paid for as follows: First three and three quarter (3 3/4) hours, time and one-half, all over three and three quarter hours double time. All Sunday work double time. Overtime compensation shall be based upon the hourly wage paid the individual employee.

13.2     Anyone called to report for work on Saturday or Sunday shall be guaranteed four hours pay.

5

## ARTICLE 14          WAGES

14.1     The Employer agrees to pay to the employees who shall be classified as follows, for work performed by them in said classification, not less than the minimum hourly rates following the classification indicated:

|     | June 11, 2001 | June 11, 2002 | June 11, 2003 |
| --- | --- | --- | --- |
| J1  | 17.26 | 17.51 | 17.86 |
| J2  | 10.27 | 10.52 | 10.87 |
| J3  | 10.02 | 10.27 | 10.62 |

14.2     Apprentice to Journeyperson Binder No. 1 - regular hourly rate - The regular hourly rate of pay for apprentices to Journeyperson Binder No. 1 shall be computed in accordance with the following schedule:
After the first thirty days (probationary period), sixty percent (60%) of contractual minimum hourly rate for Journeyperson Binder No. 1, with increases of five percent (5%) of Journeyperson Binder No. 1 rate in six (6) month stages until he/she shall receive the regular contractual Journeyperson Binder No. 1 minimum hourly rate.

14.3     An employee working a regularly scheduled night shift will be paid a premium of thirty (30) cents per hour for all time worked on such schedule.

14.4     Nothing herein contained shall be taken to prevent the Employer from paying hourly wages to any employee in excess of the minimum hourly rate herein prescribed.

## ARTICLE 15          SENIORITY

15.1     Seniority shall be by plant and shall be computed from the original date of employment. When the employee resigns or is discharged, his or her seniority starts on the re-employment date. Approved leaves of absences shall not terminate seniority standing.

## ARTICLE 16          HEALTH AND WELFARE

16.1    The employer shall pay into the Local's Health and Welfare
        Fund as follows:

| July 1, 2001 | July 1, 2002 | July 1, 2003 |
|--------------|--------------|--------------|
| $400.00      | $425.00      | $450.00      |

These payments shall be made for every eligible employee
covered by this contract and the said payments shall be made
to local 471-M G.C.I.U. Welfare Fund Trustees, to which other
companies under contract with the Union may also participate.
Such contributions shall be used to provide for the benefit of
such employees hospitalization, surgical, medical expenses and
like benefits. Coverage shall also be extended to full time
officers and employees of the Union and of the Welfare Fund
and any other Union related Fund and any non-union employees.
Hospitalization, surgical and medical expenses and like
benefits may include dependents of such covered employees.

16.2    The Employer shall deduct each week the employee's
        contribution into the Health and Welfare Fund from the wages
        of each employee covered by this agreement. The amount of the
        contribution shall be establish by the Union.

16.3    The Employer shall remit each month to the G.C.I.U. Local 471-
        M Health and Welfare Fund the amount of contribution deducted
        the previous month.

16.4    The Union shall have the right to designate the kind, source
        and manner of providing such benefits.

16.5    The Company shall make payments by the 10th of each month for
        the succeeding month. If the Company is in default in payment
        required under this article for more than thirty (30) days, it
        shall be liable for and agrees to pay such legal, court and/or
        other costs incurred in collection proceedings and to pay
        interest at 8% per annum during the late period.

7

16.6    The company agrees to be bound by the terms of the Agreement and Declaration of Trust establishing the aforesaid Fund as the same may be amended from time to time, and the rules. regulations and plans adopted by the Trustees from time to time.

16.7    The parties agree that the benefits payable under such Fund shall in no event be terminated solely by reason of strike or lockout; however, the employer shall be under no obligation to make any payments to the aforesaid Welfare Fund during strike or lockout.

16.8    In the event the United States Congress shall enact a law which becomes effective during the term of this Contract, pursuant to which there would be a duplication of coverage between the present plan and the program enacted by any national health law, contributions to the 471-M Welfare Fund shall nevertheless continue to be paid by the Company.    In accordance with the provisions of this Article and the Trust Agreements, the coverage shall be expanded to include any benefit which may lawfully be provided by such a welfare fund.

16.9    In the event of a lay-off, the Employer shall provide the shorter of thirty (30) days of coverage or one (1) additional payment to the Welfare Fund on behalf of the laid off employee.

16.10    In the event of the retirement of an employee with ten (10) or more years seniority, the Employer shall provide one (1) additional payment to the Welfare Fund on behalf of the retired employee.

16.11    In the event of termination, the employer shall be under no obligation to make additional payments for the terminated employee.

ARTICLE 17          SICKNESS AND ACCIDENT

17.1      Should the covered employee be unable to work due to sickness
          or accident, the weekly indemnity presently being provided by
          the employer shall continue under the same terms, conditions,
          and provisions as were in effect prior to this agreement
          except the amount is now specified to be seventy-five (75)
          percent of the effected employee's straight time weekly wage
          or $400.00, which ever is the smaller per week for a total of
          twenty-six (26) weeks, and further, the employers have the
          option of providing this coverage directly as a current
          business expense or by pooling funds collectively to provide
          this benefit without the necessity of providing this benefit
          by a policy of insurance.

ARTICLE 18          LIFE INSURANCE

18.1      The Employer will provide, at no cost to the employees, term
          life insurance in the amount of Two Thousand five Hundred
          ($2500.00) dollars payable upon the death of the covered
          employee, and may be provided as set forth in 17.1 above.

ARTICLE 19          BEREAVEMENT PAY

19.1      In the event of a death in the immediate family, that is to
          say, father, mother, child, brother, sister, husband, wife,
          mother-in-law or father-in-law, the Employer will permit the
          Employee to take three (3) days off from work, up to and
          including the day of the burial, for the purpose of attending
          the funeral of such decedent without loss of pay, provided
          that such day of days are his/her regular scheduled straight
          time work days.  In the event of the death of a spouse or
          child living at home, the Employer will permit three (3) work
          days off with pay.

9

**ARTICLE 20          RETIREMENT FUND**

20.1     The Company shall pay an amount of money equal to Eight percent (8%) of the gross weekly wages earned by each employee covered by this agreement.  All these payments shall be made to the GCIU Supplemental Retirement and Disability Fund, hereinafter referred to as the Retirement Fund, established under an Agreement and Declaration of Trust administered by a Board of Trustees composed of equal members of Employer and Union representatives for the purpose of providing retirement, disability and/or associated benefits for employees and their beneficiaries on whose behalf payments are made by the company and for financing the expenses and operation and administration of the Retirement Fund.  The term "wages" as used herein shall mean all moneys earned by an employee including but not limited to pay for overtime, shift differentials, holidays, vacation, etc.  The parties agree that participation in and coverage by the Retirement Fund may be extended to the employees of any other employer under contract with the GCIU and to the full-time employees and Officers of the International Union or any of its Local Unions and to the full-time employees and officers of any other Union Entity or employer-union entity provided that payments are made on behalf of such employees or officers and to all others covered under the terms of the Agreement and Declaration of Trust.

20.2     All payments to the Retirement Fund shall be by check or other order for money payable to the GCIU Supplemental Retirement and Disability Fund and shall be transmitted monthly (or weekly if requested by the Trustees) to the office of the Retirement Fund.  Concurrent with the payment by the Company, the Company shall submit such reports as the Trustees deem necessary for the purpose of properly administering the Trust and payment of benefits.  All payments by the Company required hereinunder shall be due and payable within seven (7) days after the payroll period for the week or month for which such payment is required.

20.3    If the Company is in default in making payments required under this Article for more than thirty (30) days, it shall be liable for, and agrees to pay such legal, court and/or other costs incurred in collection proceedings and the Union may take any action it deems advisable notwithstanding other provisions of this Agreement.

20.4    The Company agrees to be bound by the terms of the Agreement and Declaration of Trust, a copy of which is hereby acknowledged by the Company as having been received by it, establishing the aforesaid Retirement Fund, as the same may be amended from time to time, and further agrees to be bound by the rules, regulations and plans, as may be adopted by the Trustees from time to time.

20.5    The Company further agrees that the Employer-designated Initial and Successor Trustees under the Agreement and Declaration of Trust, as the same may be amended from time to time, are so designated as Employer-Trustees on its behalf.

20.6    The above pension does not include those permanent part-time employees who average eighteen (18) hours or less per week.

## ARTICLE 21                    SANITATION

21.1    The plant shall be kept in a clean, well ventilated, sanitary condition.  Such necessary facilities shall be furnished by the Employer, and the Employees shall cooperate with the Employer in this regard.

## ARTICLE 22                    HOLIDAYS

22.1    The following days shall be celebrated as holidays: THE DAY BEFORE NEW YEAR'S DAY, NEW YEAR'S DAY, GOOD FRIDAY, MEMORIAL DAY, INDEPENDENCE DAY, LABOR DAY, THANKSGIVING DAY, THE DAY FOLLOWING THANKSGIVING, CHRISTMAS DAY, THE WORKING DAY BEFORE CHRISTMAS, as to all employees. In the event of a holiday occurring on Sunday, the day universally observed will be

considered the holiday.  If a holiday falls on a Saturday, the employees will be paid for the holiday, or else have the working day preceding or the working day following the holiday off with pay.

22.2    All work performed at the request of the Employer on a holiday will be paid at the rate of two and one-half times the employee's regular rate for all such work performed.  Each employee on the active payroll at the occurrence of a holiday shall receive straight time pay if no work is performed, provided that to be eligible for holiday pay, the employee must work the regularly scheduled working day previous to the holiday and the regularly scheduled working day after the holiday. Absence from work on the day preceding or succeeding a holiday due to unavoidable sickness proved by doctor's Certificate, if requested by Employer, or disabling accident incurred by the employee at work or death in the employee's immediate family shall not preclude employee from eligibility for holiday pay.  Holiday pay does not apply to laid-off employees or employees on sick leave or other leave of absence. However, an employee working less than an average of fifteen (15) hours per week in the previous year shall recover for each holiday an amount equal to his average hours worked per day in the previous year.

## ARTICLE 23           VACATIONS

23.1    Each employee shall be eligible for a vacation with pay, provided such employee has been employed by the Employer for a period of one year, an employee's anniversary in the current vacation year shall be taken to determine the number of weeks vacation to which such employee shall be entitled, in accordance with and governed by the following schedule:

23.2    Employees who have been actively and continuously employed for one (1) year  shall be entitled to one (1) week vacation with pay.  Dates to be arranged between Employee and Employer, by mutual agreement with due consideration being given to the

needs of efficient operations within the shop.

23.3    Employees who have been actively and continuously employed for two (2) or more years shall receive two (2) weeks vacation with pay, dates to be arranged between the Employee and the Employer with due consideration to be given to the needs of the efficient operations within the shop.

23.4    Employees with five (5) years of continuous service shall be entitled to three (3) weeks vacation with pay, dates to be arranged between the Employee and the Employer by mutual agreement, and provided that the third week may be scheduled at a time different from the scheduling of the first two weeks.

23.5    Employees with twelve (12) years of continuous services shall be entitled to four (4) weeks vacation with pay, dates to be arranged between the Employee and the Employer by mutual agreement with due consideration to be given to the needs of the efficient operations within the shop and provided that the third and fourth weeks may be scheduled at a time different from the scheduling of the first two weeks.

23.6    Vacations cannot be accumulated from year to year. They must be taken during the vacation period for which the vacation was earned.

23.7    Vacation pay shall be paid prior to the employee's vacation period.

23.8    In view of the fact that vacations are earned, and that the extent of an employee's vacation is predicated on the number of days worked, in the event an employee dies who has earned, but not used his/her vacation, his/her beneficiary shall receive an amount in cash equivalent to his/her earned but not used vacation. Similarly, in case of an employee who leaves his/her job, he/she shall be entitled to an amount in cash equivalent to his/her earned but not used vacation.

13

23.9     An employee shall be entitled to two (2) weeks of his/her vacation during the period from May 1st through September 30th, seniority to govern.

23.10    However, an employee working less than an average of fifteen (15) hours per week in the previous year shall recover an amount for each week of his/her vacation equal to his/her average hours worked the previous year.

## ARTICLE 24                SEVERANCE PAY

24.1     An employee who has been regularly employed by the same Employer for a period in excess of one (1) year or more shall be given two (2) weeks notice, or in lieu thereof at the Employer's option, shall be given two (2) weeks pay when he /she is discharged or laid off permanently.

24.2     In the event an employee is discharged for insubordination, destruction of company property, or other like charge, 24.1 will not apply.

## ARTICLE 25                HANDLING OF GRIEVANCES

25.1     For the purpose of this Agreement, a grievance shall be considered to be the aggrieved state of mind of an employee in his/her belief that the terms and conditions of this Agreement have been disregard or violated by the Employer and making the same known to the Employer.

25.2     All grievances must be submitted within five (5) working days after occurrence giving rise thereto and shall be handled as follows:

25.3     The grievance shall be reduced to writing, signed by the Union Representative and the aggrieved Employee and two copies presented to the supervisor of the department or area wherein the Employee worked.  The grievance must contain a statement of what provision or provisions of the Agreement have been

14

allegedly violated or disregarded. The supervisor shall give his/her answer in writing not later than three (3) working days after the time the written grievance was presented to him/her.

25.4    If the grievance is not settled or adjudged satisfactorily in 25.3, it may be referred not later than three (3) working days after the answer of the supervisor has been given, to a meeting between a Union Representative and the Employer's Superintendent. If the grievance is to be considered in this step, the Union Representative must note upon the grievance form above his/her signature the reason for his/her rejection of the Supervisor's answer in the first step (25.3). The Superintendent shall give his/her answer in writing not later than three (3) working days after the time the grievance was presented to him/her in this Second Step.

25.5    If the grievance is not adjusted satisfactorily in Step 2 either party upon written notice to the other may request arbitration of any grievance which involves the interpretation or application of a specific term or provision of this Agreement. If the Company and the Union are not able to agree on the selection of an Arbitrator within seven (7) days after the date of such grievance, may be referred by either party to the American Arbitration Association applicable to labor arbitrations, and any arbitration thereunder shall be conducted in accordance with the rules of said Association, subject however to the terms and provisions of this Agreement. The parties shall share equally in the compensation and the expense of the Arbitrator and of the Arbitration. The decision of the Arbitrator shall be final and binding upon the parties when made in writing with his/her reasons therefor.

ARTICLE 26        INDIVIDUAL RIGHT OF EMPLOYEE

26.1    The Company agrees that it will not discharge, discipline or

15

discriminate against any employee because such employee refuses to handle any struck *work* of the Graphic Communications International Union.

## ARTICLE 27        NO DISCRIMINATION CLAUSE

27.1    The parties to this Agreement agree to continue their policy of no discrimination against any employee because of race, creed, religion, color, age, sex, national origin, or veteran's status, in regards to employment advancement, working conditions, rates of pay, acceptance into Union membership, or selection for apprenticeship openings.

## ARTICLE 28        APPROVAL

28.1    It is further agreed that this Agreement represents the complete Agreement between the parties and, other than as provided herein, concludes collective bargaining for its term. But it is agreed that should it be or become in conflict with any Federal or State statutes or administrative order or directive, the provisions of such law, order or directive shall apply without affecting the other provisions of this Agreement.

28.2    It is further agreed between the parties hereto that this Agreement has been negotiated on behalf of the Employees herein by representatives of the Graphic Communications International Union Local Union no. 471-M and by representatives of the Employer, by a committee or representatives representing each Employer, and upon the termination of the Contract, all negotiations for a succeeding contract may be conducted on the part of the Employer, by a committee or representatives representing such Employer.

## ARTICLE 29        PICKET LINE

29.1    Notwithstanding any other provision of this contract, the

16

failure or refusal of any Employee covered by this Agreement to pass through of work behind any *lawful picket line* established at the Employer's Plant or Print Shop by Graphic Communications International Local Union No. 471-M shall not be deemed a breach of this Contract, and the Employer shall not discharge, discipline or otherwise discriminate against any such Employee.

## ARTICLE 30     SUPERVISORY EMPLOYEES

30.1     It is further understood and agreed between the parties to this Agreement that nothing contained herein is intended, nor shall be permitted, to prevent the membership of supervisory employees in the Union, providing that supervisory employees doing production work shall be members of the Union. No supervisor shall be subject to fine, disciplinary action or expulsion by the Union in the performance of his/her duties as supervisor when such action is authorized by the terms of this Agreement.

## ARTICLE 31     INTERNATIONAL APPROVAL

31.1     The terms and conditions of this contract and amendments are subject to review of the International and the contract does not become a valid and binding contract without the approval of the International President.

31.2     Such approval does not, however, under any circumstances make the International responsible for the observance of this contract or for any breach thereof.

17

IN WITNESS WHEREOF, the parties hereby have hereunto set their duly authorized representatives, as of the day and year first above written.

WILL COUNTY EMPLOYING
PRINTERS ASSOCIATION

_Keith Peters, Inc., D.B.A._
Joliet Republican Printing
Company

_Printing Craftsmen of Joliet,_
Incorporated

_Joliet Litho-Print Company_
Incorporated

GRAPHIC COMMUNICATIONS
INTERNATIONAL UNION
LOCAL 471-M

President

Recording-Secretary-Treasurer

GRAPHIC COMMUNICATIONS INTERNATIONAL UNION

BY:

International President

The approval by the International President of this Contract does not under any circumstances, make the International a party to this Contract nor responsible for its observance or for any breach thereof.

18